## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) | REGINA WILLIAMS, Individually and as Personal Representative of the Estate of GEROGE ROUSE, Deceased, ) ) ) ) | |
| | Plaintiff, ) ) | |
| v. | ) ) | Case No. CIV-2013-759-M |
| (2) | BOARD OF COUNTY COMMISSIONERS OF GRADY COUNTY, ) ) ) | |
| (3) | GRADY COUNTY CRIMINAL JUSTICE AUTHORITY, ) ) ) | |
| (4) | GRADY COUNTY INDUSTRIAL AUTHORITY, ) ) ) | |
| (5) | ART KELL, an individual, ) ) | |
| (6) | MARVIN AKERS , an individual, ) ) | |
| (7) | FRANCIA THOMPSON, an individual, ) ) | |
| | Defendants. ) | |

### AMENDED COMPLAINT

COMES NOW Plaintiff, Regina Williams, as personal representative of the Estate of George Rouse, and for her causes of action against the Defendants states as follows:

1)      Regina Williams ("Williams") is a resident of Grady County, Oklahoma. Williams is the personal representative of the Estate of George Rouse ("Estate").

2)      Defendant Board of County Commissioners of Grady County, Oklahoma ("Commissioners") is the legislative entity of Grady County, Oklahoma.

3)      The Grady County Criminal Justice Authority ("CJA") and the Grady County Industrial Authority ("GCIA'") are agencies of and located in Grady County, Oklahoma

(collectively referred to hereinafter as the "Authority"). Upon information and belief, the Authority is responsible for operation of the Grady County Law Enforcement Center ("GCLEC").

4)      Grady County Sheriff Art Kell ("Sheriff" or "Kell") is an individual and final policymaker for Grady County, Oklahoma.

5)      Marvin Akers is an employee of the Oklahoma State Bureau of Investigation ("OSBI") who was responsible for the safety and security of decedent while in Akers's custody and control.

6)      Francia Thompson is an employee of the OSBI who was responsible for the safety and security of decedent while in Thompson's custody and control.

7)      This Court has jurisdiction over the claims set forth herein, and venue is proper.

8)      Notice of Tort claim was served on all the above governmental defendants on July 10, 2012.

9)      The Board denied the claim on or about July 23, 2012. Plaintiff has timely complied with all prerequisites for filing suit under the Oklahoma Governmental Tort Claims Act.

10)     On or about January 12, 2012, Rouse was arrested and, upon information and belief, was considered a person of interest by law enforcement in a recent homicide.

11)     Upon information and belief, immediately prior to the arrest, employees from several law enforcement agencies participated in a manhunt for Rouse. Upon information and belief, these agencies included the Grady County Sheriff's Department, and the OBSI.

12)    Upon information and belief, the Sheriff and employees of these agencies, including Thompson and Akers, knew or discovered immediately after the arrest, but before arriving at the GCLEC, that Rouse harbored suicidal ideations.

13)    Upon information and belief, Thompson and/or Akers transported or escorted Rouse to the GCLEC knowing that he was presently suicidal.  Despite this knowledge, and upon information and belief, Thompson and/or Akers did not inform the employees at the booking desk of Rouse's existing suicidal thoughts.

14)    Upon information and belief, the Sheriff and his employees also knew that Rouse harbored suicidal ideations prior to his arrival at the GCLEC, but likewise failed to alert the employees at the GCLEC.

15)    Upon his arrival at the GCLEC, Rouse was booked into the facility as a person of interest in a homicide investigation.  Upon information and belief, employees at the GCLEC did not provide Rouse with any mental health treatment, and he was not monitored or evaluated by a mental health professional before booking.

16)    Upon information and belief, employees at the GCLEC assigned Rouse to a regular holding cell that was not designed or designated to prevent suicide.

17)    Upon information and belief, the employees of the GCLEC did not independently evaluate the mental health condition of Rouse, and did not follow policies or practices designed to detect or prevent suicide, or such policies or practices were non-existent.

18)    Upon information and belief, the failure to provide adequate training, policies and/or practices designed to identify and protect arrestees with suicidal ideations increased the substantial risk of serious harm to Rouse.

19)    Rouse committed suicide by hanging shortly after he was booked into the facility.

## STATE LAW CLAIMS

### OGTCA and *Bosh* Claim

20)     By participating in the arrest of Rouse, restraining his liberty and freedom of movement, and the ability to obtain self-help, Board, through its employees, established a special relationship and assumed responsibility for the safety and security of Rouse.

21)     Board had an affirmative duty to protect Rouse from harm, to act reasonably, and to take affirmative steps to protect Rouse from self-harm.

22)     Board breached that duty by failing to disclose critical information about decedent's suicidal ideations to employees at the GCLEC, despite knowledge that those employees would be receiving Rouse for booking and detention.

23)     By accepting Rouse into its facility, restraining his liberty and freedom of movement, and the ability to obtain self-help, the Authority, through its employees, established a special relationship and assumed responsibility for the safety and security of Rouse.

24)     The Authority had an affirmative duty to act reasonably in treating, monitoring, and evaluating decedent's mental health, and to act reasonably in preventing decedent from harming himself.

25)     The Authority breached that duty by failing to independently evaluate the facts and circumstances surrounding the detention of Rouse, and by failing to adequately inquire of the presenting agency employees about Rouse's mental condition and the potential for self-harm.

26)     As a direct and proximate result of the allegations above, the Estate suffered and continues to suffer damages including but not limited to severe emotional distress, mental anguish, physical injury, lost income, and loss of consortium.

## 42 U.S.C. SECTIONS 1983

27)     Plaintiff hereby adopts and re-alleges each of the facts and allegations set forth above as if specifically set forth herein.

28)     Each of the defendants involved in the incident giving rise to this litigation were acting under the color of law at all relevant times.

29)     Individuals Kell, Akers, and Thompson were acting under the color of law at all relevant times.

30)     Upon information and belief, Defendant Kell knew that decedent harbored suicidal ideations, and further knew that he was being transported for booking into the GCLEC.  Upon information and belief, Kell further knew that employees at the GCLEC relied upon law enforcement in the field to provide critical details about the mental condition of arrestees, and that failure to alert the employees at the GCLEC to Rouse's suicidal ideations would increase the risk of harm to Rouse.  Despite this knowledge, and with deliberate indifference to the substantial risk that Rouse posed to himself, Kell failed to alert employees at the GCLEC of Rouse's suicidal ideations in violation of his rights as secured by the Fourteenth Amendment to the U.S. Constitution actionable through 42 U.S.C. § 1983.

31)      Upon information and belief, the Authority failed to provide adequate training to employees accepting arrestees for booking at the GCLEC, including, but not limited to evaluation and monitoring of individuals with mental health issues, separation and

monitoring of individuals known or reasonably known to be suicidal.

32)     Upon information and belief, accepting and detaining arrestees with mental health issues that include suicidal ideations is a predictable and reoccurring situation at the GCLEC.

33)     Upon information and belief, the Authority's failure to train employees with respect to mental health issues and suicide precautions for individuals like Rouse resulted from deliberate indifference to the rights of Rouse and those like him, for which the Authority is liable under the Fourteenth Amendment to the U.S. Constitution actionable through 42 U.S.C. § 1983.

34)     Upon information and belief, Defendant Akers and/or Thompson knew that decedent posed an imminent and substantial risk of serious harm to himself based upon the factual circumstances surrounding the decedent's arrest, and based upon information received, knew that decedent was presently suicidal.

35)     On January 10, 2012, Akers and/or Thompson had received information from the Oklahoma Information Fusion Center alerting that GEROGE ROUSE should be considered suicidal.

36)     Akers and/or Thompson further knew that concealing information about the decedent's suicidal ideations from the booking officer would increase the risk of harm to decedent by reducing the likelihood that the booking officer would implement suicide precautions or place decedent on suicide watch.

37)     Despite this knowledge, and with deliberate indifference to the consequences, Akers and/or Thompson presented decedent for booking without advising the booking officer of the decedent's present intent to commit suicide.

38)    The actions set forth above represent deliberate indifference to a substantial risk of serious harm in violation of the Fourteenth Amendment to the United States Constitution in the failure to protect the decedent from himself, and for which Akers and/or Thompson is liable pursuant to 42 U.S.C. § 1983.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Regina Williams prays for judgment against Defendants in an amount in excess of Seventy- five Thousand Dollars ($75,000.00), together with costs, interest, reasonable attorney's fees, and other relief which this Court deems just and reasonable.

/s/ D. Mitchell Garrett
D. Mitchell Garrett, Esq. OBA #20704
GARRETT LAW CENTER, PLLC
P.O. Box 1349
Tulsa, OK  74101-1349
 (918) 895-7216
 (918) 895-7217


BRET BURNS
519  W.  Chickasha  Ave.
Chickasha, OK 73018
(405) 320-5911
(405) 247-2445

-AND-

DUSTJN L. COMPTON
BASS LAW FIRM, PC
P.O. Box 157
El Reno, Oklahoma 73036
(405) 262-4040
(405) 262-4058


ATIORNEYS FOR PLAINTIFF